**APPLE COMPUTER, INC.,**
**Plaintiff-Appellee,**

v.

**FORMULA INTERNATIONAL INC.,**
**Defendant-Appellant.**

**No. 83–5875.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 1984.

Decided Feb. 8, 1984.

---

Lois W. Abraham, Brown & Bain, Palo Alto, Cal., for plaintiff-appellee.

Bruce G. Spicer, Law Offices of Thomas E. Schatzel, Santa Clara, Cal., for defendant-appellant.

Before ANDERSON, SKOPIL and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Formula International, Inc. (Formula) appeals from the district court's grant of a preliminary injunction in favor of the plaintiff, Apple Computer, Inc. (Apple). The injunction prohibits Formula from copying computer programs having copyrights registered to Apple, from importing, selling, distributing, or advertising those copies, and from using the mark "Pineapple" or any other mark or name confusingly similar to the trademarks used by Apple. Because we find that the district court did not abuse its discretion or rely on erroneous legal premises in issuing the injunction, we affirm.

FACTS:

Formula is a wholesaler and retailer of electronic parts and electronic kits. In May 1982, Formula entered the computer market, selling a computer kit under the trademark "Pineapple." The computer was designed to be compatible with application software written for the home computer manufactured by Apple, the Apple II. Included within Formula's computer kit were two computer programs embodied in semiconductor devices called ROM's (Read Only Memory). Formula concedes for purposes of appeal that the two programs are sub-

stantially similar to two programs for which Apple has registered copyrights. Apple also introduced evidence to show that Formula had sold copies of three other programs for which Apple holds the copyright. These three programs are not sold as part of a computer by either Apple or Formula, but are distributed separately.

The computer programs involved in this lawsuit are operating systems programs, that is, programs that are designed to manage the computer system. For example, one program translates instructions written in a higher-level language that is more understandable to the computer user into a lower-level object code that the computer understands. As such, the programs are distinguishable from application programs, which are programs that directly interact with the computer user.

Apple brought suit against Formula claiming copyright, trademark, and patent infringement, as well as unfair competition. Formula counterclaimed for antitrust violations and unfair competition and sought declaratory relief as to the validity of certain patents and copyrights. After a brief period of discovery, Apple moved for a preliminary injunction based on its copyright and trademark infringement claims, and on its unfair competition claims. The district court granted the motion on April 12, 1983, and the district court's opinion is reported at 562 F.Supp. 775 (C.D.Cal.1983).

*Standard of Review:*

■ To obtain a preliminary injunction, a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor. *Beltran v. Myers,* 677 F.2d 1317, 1320 (9th Cir.1982); *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 502 (9th Cir.1980). The district court held that Apple had shown a likelihood of success on the merits of its copyright and trademark infringement claims and significant irreparable harm. 562 F.Supp. at 783, 785. Our review of the district court at this stage of the proceeding is very limited. *See Sports Form, Inc. v. United Press International, Inc.,* 686 F.2d 750, 752 (9th Cir.1982). The district court's grant of the preliminary injunction must be affirmed unless the court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Beltran v. Myers,* 677 F.2d at 1319.

ANALYSIS:

I. DID THE DISTRICT COURT ERR IN PRELIMINARILY ENJOINING FORMULA FROM COPYING, SELLING, AND DISTRIBUTING COMPUTER PROGRAMS WITH COPYRIGHTS REGISTERED TO APPLE?

A. *Likelihood of success on the merits*

■ On the basis of the evidence before the district court, we cannot conclude that the court erred in finding that Apple had demonstrated a likelihood of success on the merits of its copyright infringement claim. Under the Copyright Act, Apple's certificates of copyright registration constitute *prima facie* evidence of the validity of Apple's copyrights, 17 U.S.C. § 410(c), and Formula has the burden of overcoming the presumption of validity. *Williams Electronics, Inc. v. Artic International, Inc.,* 685 F.2d 870, 873 (3d Cir.1982).

■ Formula asserts that the district court erred in granting the preliminary injunction by relying on the legal premise that the Copyright Act, 17 U.S.C. § 101 *et seq.,* extends protection to all computer programs regardless of the function which those programs perform. Formula contends that the computer programs involved in this lawsuit, because they control the internal operation of the computer, are only "ideas" or "processes," and therefore, unlike application programs, they are not protected by copyright. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any *idea, procedure, process, system, method of operation,* concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.") (emphasis added). For-

mula also points to the idea/expression dichotomy recognized in case law, *see, e.g., Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1879); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1163–64 (9th Cir.1977), and contends that a computer program is protected under the Copyright Act only if the program embodies expression *which is communicated to the user when the program is run on a computer.*

Formula's position, however, is contrary to the language of the Copyright Act, the legislative history of the Act, and the existing case law concerning the copyrightability of computer programs. An examination of the legislative history reveals that Formula's arguments were considered and rejected by Congress when copyright protection was extended to computer programs.

In 1974, the National Commission on New Technological Uses of Copyright Works (CONTU) was established by Congress to consider, *inter alia,* to what extent computer programs should be protected by copyright law. The CONTU Final Report recommended that the copyright law be amended "to make it explicit that computer programs, to the extent that they embody an author's original creation, are proper subject matter of copyright." National Commission on New Technological Uses of Copyrighted Works, *Final Report* 1 (1979) [hereafter CONTU Report].

Commissioner Hersey dissented from this recommendation, arguing that "[t]he Act of 1976 should be amended to make it explicit that copyright protection does not extend to a computer program in the form in which it is capable of being used to control computer operations." CONTU Report at 1. Hersey's dissent was based on his belief, similar to the argument advanced by Formula, that "[w]orks of authorship have always been intended to be circulated to human beings and to be used by them—to be read, heard, or seen, for either pleasurable or practical ends. Computer programs, in their mature phase, are addressed to machines." *Id.* at 28.

Commissioner Nimmer, while concurring in the Commission's opinion and recommendation, provided a possible line of demarcation for computer programs to be considered in the future if the Commission's recommendation proved to be too open-ended. Nimmer suggested that it might be desirable to limit copyright protection for software to those computer programs which produce works which themselves qualify for copyright protection. CONTU Report at 27.

The majority of the Commission, however, expressly considered and rejected both the Hersey and Nimmer positions:

It has been suggested by Vice-Chairman Nimmer in his separate opinion that programs be copyrighted only when their use leads to copyrighted output.... This distinction is not consistent with the design of the Act of 1976, which was clearly to protect all works of authorship from the moment of their fixation in any tangible medium of expression. Further, it does not square with copyright practice past and present, which recognizes copyright protection for a work of authorship regardless of the uses to which it may be put. *The copyright status of the written rules for a game or a system for the operation of a machine is unaffected by the fact that those rules direct the actions of those who play the game or carry out the process.* Nor has copyright been denied to works simply because of their utilitarian aspects. It follows, therefore, that there should likewise be no distinction made between programs which are used in the production of further copyrighted works and those which are not.

. . . .

*That the words of a program are used ultimately in the implementation of a process should in no way affect their copyrightability.*

CONTU Report at 21 (emphasis added) (footnote omitted).

In 1980, Congress accepted the CONTU majority's recommended statutory changes verbatim. *See* 17 U.S.C. §§ 101, 117. Among other changes not relevant here, the

Copyright Act was amended to add the following definition of "computer program":

A "computer program" is a set of statements or instructions to be used *directly or indirectly* in a computer in order to bring about a certain result.

17 U.S.C. § 101 (emphasis added). As recommended by the CONTU majority, the Act makes no distinction between the copyrightability of those programs which directly interact with the computer user and those which simply manage the computer system.

Formula's reliance on the idea/expression dichotomy to argue that computer programs are copyrightable only if they provide expression to the computer user is misplaced. The distinction between ideas and expression is intended to prohibit the monopolization of an idea when there are a limited number of ways to express that idea:

The "idea-expression identity" exception provides that copyrighted language may be copied without infringing when there is but a limited number of ways to express a given idea. This rule is the logical extension of the fundamental principle that copyright cannot protect ideas. In the computer context this means that when specific instructions, even though previously copyrighted, are the only and essential means of accomplishing a given task, their later use by another will not amount to an infringement.

. . . .

When other language *is* available, programmers are free to read copyrighted programs and use the ideas embodied in them in preparing their own works.

CONTU Report at 20 (footnotes omitted). *See also Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1253 (3d Cir.1983) ("We . . . thus focus on whether the idea is capable of various modes of expression. If other programs can be written or created which perform the same function as an Apple's operating system program, then that program is an expres-

sion of the idea and hence copyrightable."). As in *Franklin,* Apple "does not seek to copyright the method which instructs the computer to perform its operating functions but only the instructions themselves." *Id.* at 1251. Apple introduced evidence that numerous methods exist for writing the programs involved here, and Formula does not contend to the contrary. 562 F.Supp. at 787. Thus, Apple seeks to copyright only its particular set of instructions, not the underlying computer process.

Further, Formula provides absolutely no authority for its contention that the "expression" required in order for a computer program to be eligible for copyright protection is expression that must be communicated to the computer user when the program is run on a computer. The Copyright Act extends protection to "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). The computer program when written embodies expression; never has the Copyright Act required that the expression be communicated to a particular audience.

**B.** *Irreparable Harm*

Formula contends that Apple presented no evidence of harm to Apple if Formula were allowed to continue distributing copies of the programs to which Apple possesses the copyright during the pendency of the lawsuit.

A showing of a reasonable likelihood of success on the merits in a copyright infringement claim raises a presumption of irreparable harm. *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d at 1254; *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 620 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). Further, Apple introduced evidence of the considerable time and money that it had invested in the development of the computer programs. "[T]he jeopardy to Apple's investment and

competitive position caused by [the defendant's] wholesale copying of many of its key operating programs ... satisf[ies] the requirement of irreparable harm needed to support a preliminary injunction." *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d at 1254.

Formula contends that it will be irreparably harmed by the injunction because the injunction will inhibit Formula's entry into the computer market. At the time Formula filed its response to Apple's motion for a preliminary injunction, however, it had sold only 49 "Pineapple" computer kits. Further, Formula's revenues from the sale of computer products constitute only a small percentage of its total sales. 562 F.Supp. at 777.

## II. DID THE DISTRICT COURT ABUSE ITS DISCRETION IN PRELIMINARILY ENJOINING FORMULA FROM USING THE TRADEMARK "PINEAPPLE" ON ITS COMPUTER PRODUCTS?

### A. *Likelihood of Success on the Merits*

■ Formula contends that the trial court abused its discretion in preliminarily enjoining Formula from using the trademark "Pineapple" because it failed to consider the eight factors set forth in *AMF v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979) in determining whether a likelihood of confusion of the parties' trademarks existed. This argument, however, ignores that at this stage of the proceeding, the trial court is not required to consider all of those factors. In *Miss Universe, Inc. v. Flesher,* 605 F.2d 1130 (9th Cir.1979), this court stated that "in granting a preliminary injunction, the parties will not have had a full opportunity to either develop or present their cases and the district court will have had only a brief opportunity to consider the different factors relevant to the likelihood of confusion determination." *Id.* at 1133. The appropriate time for giving full consideration to the factors set out in *AMF v. Sleekcraft Boats* is when the merits of the case are tried. *Miss Universe, Inc.,* 605 F.2d at 1133 n. 7. Therefore, appellate review at this point is limited to whether the court applied the appropriate legal standard relating to the issuance of this type of injunction and whether there was any abuse of discretion by the trial court. *Id.* at 1133–34.

Formula does not contend that the trial court applied the wrong legal standard in issuing the injunction. Further, we cannot say that the trial court abused its discretion in concluding that the use of the name "Pineapple" is confusingly similar to the Apple trademark when used on related goods. Formula concedes that both Apple and Formula sell similar products through similar marketing channels and also that Formula intended to expand its product line into assembled computers. Under these circumstances, it was not a clear abuse of discretion for the trial court to conclude that the addition of the prefix "Pine" to the trademark "Apple" presented a likelihood of confusion. One of the possible effects of the use of the prefix may be to suggest that the computer kits are manufactured by licensees or subsidiaries of Apple. *See Goodyear Tire & Rubber Co. v. H. Rosenthal Co.,* 246 F.Supp. 724 (D.Minn.1965).

### B. *Irreparable Injury*

Once Apple demonstrated a likelihood of success on the merits of its trademark infringement claim, the district court could have reasonably concluded that continuing infringement would result in loss of control over Apple's reputation and loss of goodwill. *See, e.g., Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.,* 633 F.2d 746, 753 (8th Cir.1980); *St. Ives Lab., Inc. v. Nature's Own Lab.,* 529 F.Supp. 347, 350 (C.D.Cal. 1981). Formula, on the other hand, has only recently entered the computer market and its computer sales constitute a minor percentage of its total sales. Thus, it cannot be said that the district court abused its discretion in concluding that continuing infringement by Formula presented a possibility of irreparable harm to Apple and that the balance of the hardships tipped in Apple's favor.

527

CONCLUSION:

The district court did not abuse its discretion or rely on erroneous legal premises in issuing the preliminary injunction.

AFFIRMED.