**NEC CORPORATION, a Japanese corporation, and NEC Electronics Inc., a California corporation, Plaintiffs,**

v.

**INTEL CORPORATION, a California corporation, Defendant.**

**No. C–84–20799–WAI.**

United States District Court,
N.D. California.

Sept. 22, 1986.

been fully and fairly tried, argued and submitted, the court now renders its Partial Decision, Findings of Facts and Conclusions of Law.

## ·DECISION

Defendant and counterclaimant INTEL CORPORATION has good, valid and existing copyrights on its 8086/8088 microcode.

## FINDINGS OF FACT

1. INTEL CORPORATION is a California corporation, and has its principal place of business in Santa Clara, California.

2. NEC CORPORATION is a Japanese corporation and has its principal place of business in Japan.

3. NEC ELECTRONICS, INC., is a California corporation, and has its principal place of business in Mountain View, California.

4. NEC CORPORATION and NEC ELECTRONICS, INC., are hereinafter collectively referred to as "plaintiffs."

5. INTEL CORPORATION is hereinafter referred to as "defendant."

6. The above-entitled action was filed by plaintiffs on December 21, 1984. By their Complaint, plaintiffs seek declaratory relief. Defendant filed its counterclaim for copyright infringement on February 25, 1985.

7. By its Complaint, plaintiffs seek a declaration that defendant's copyrights are invalid and/or not infringed by the plaintiff's V20–V50 microcode and an injunction against the enforcement thereof by defendant, or alternatively that plaintiffs are licensed under defendant's copyrights.

8. By its counterclaim, defendant seeks an injunction prohibiting plaintiffs from infringing its copyrights, damages and costs of suit.

9. By order dated March 26, 1986, the court bifurcated the plaintiffs' claim for unfair competition for trial at a later time.

Robert B. Morrill, Skjerven, Morrill, Mac-Pherson, Franklin & Friel, Santa Clara, Cal., for plaintiffs.

Lois W. Abraham, Brown & Bain, Palo Alto, Cal., for defendant.

## PARTIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

INGRAM, District Judge.

The above-entitled action came duly on for trial on May 12, 1986, and it having

10. This court has jurisdiction of the above-entitled action under 28 U.S.C. §§ 1331 and 1338, and venue is proper under 28 U.S.C. §§ 1391 and 1400(a).

11. On March 26, 1986, the court ordered that the issue of damages, if any, be bifurcated and tried separately.

12. On March 20, 1986, the court ordered that in order of proof the issues raised by the counterclaim proceed first.

13. The works in suit are defendant's 8086/8088 microcodes which are identified in Copyright Certificates Reg. No. TX988–844, Reg. No. TX1–521–507, Reg. No. TX953–802, Reg. No. TXU186–617, Reg. No. TX953–801 and Reg. No. TXU186–616, except for the portions entitled SX16, AAD, AAM, LEA, and VSHIFT. (Joint Pre-trial Statement.)

14. The terms "microcode" and "microprogram" were used in many instances interchangeably at trial, and may be used interchangeably in these Findings and Conclusions. (Frieder TR 1445:23–1447:8.)

15. The parties have agreed that the following facts are not in dispute:

A. Defendant is the holder of copyright registrations TX988–844, TX953–802, TX953–801, TXU–521–507, TXU186–617, and TXU186–616 on the INTEL microcode. The principal creator of the INTEL microcode is James McKevitt.

B. The alleged infringing works are the NEC microcodes set forth in NEC Production No. 031138–31180 (V20/V30) and 33070–33100 (V40/V50). The principal creator of the NEC microcodes is Hiroaki Kaneko of NEC CORPORATION.

C. The macroinstruction set of the INTEL 8086/8088 microprocessors is utilized by defendant's and plaintiffs' microprocessors, including the NEC V-series (the V20, V30, V40 and V50). Defendant has not claimed in this action that plaintiffs' use of such macroinstruction set as such violates any rights of defendant.

D. The V20–V50 microprocessors have hardware similarities to the hardware of the 8086/8088 microprocessors, but the V20–V50 also contain hardware not found in the 8086/8088. Defendant has not claimed in this action that such hardware similarities as such violate any rights of defendant.

E. Defendant and plaintiff NEC entered into an agreement on February 23, 1983 ("the 1983 Agreement") whereunder defendant licensed plaintiff NEC to use under defendant's copyrights the defendant's 8086/8088 microcode "with respect to the NEC uPD8086 and uPD8088 including improvements thereon developed by NEC."

F. On September 27, 1984, defendant and plaintiff entered into a Memorandum of Understanding whereunder defendant and plaintiff agreed on royalty rates under the 1983 Agreement for the period after March 31, 1984 on a per use basis.

G. On April 28, 1976, defendant and plaintiff entered into a Patent Cross-License Agreement.

H. Plaintiff NEC ELECTRONICS INC., is selling the V20/V30 and providing samples of the V40/V50 microprocessors in the United States.

I. No copy of any of the defendant's 8086/8088 microcode was published prior to January 1, 1978.

J. Plaintiffs have not paid or offered to pay any royalties to defendant relative to plaintiffs' distribution of any V-series microprocessor.

K. Defendant's copyrights TX988–844, TX953–802 and TX953–801 were issued within five years after any publication without notice of 8086/8088 microprocessors by NEC, Fujitsu, Mitsubishi and Oki.

L. Plaintiffs had access to the defendant's 8086/8088 microcode.

M. Both the defendant's and plaintiffs' microcodes interpret the 8086/8088 macroinstruction set.

N. The 8086/8088 and the V20–V50 contain, among other things, the following: General Registers: AX, BX, CX, DX; Pointer and Index Registers: SP, BP, SI, DI: Segment Registers: CS, DS,

SS, ES; Instruction Pointer and Flags: IP, Flags.

## ENTITLEMENT OF DEFENDANT'S MICROPROGRAMS TO COPYRIGHT PROTECTION

16. Defendant's microprograms are a set of statements used, directly or indirectly to bring about the result of interpreting the INTEL 8086 instruction set. (Patterson TR 143:5–8.)

17. Storage of microprograms in Read Only Memory (ROM) which is located in the control section of the computer does not render the microprogram part of the control of the computer. The control section of the computer executes instructions. A microprogram directs the control section to interpret or execute instructions. (Patterson TR 146:20–147:7.)

18. The writing of microprograms is a creative endeavor. (Frieder TR 1757; 17–21.)

19. The assembly language in which microcode is written may be called source code. (Kaneko TR 2058:3–10.)

20. In microcode assembly source code is transferred into binary patterns, or object code. (Kaneko 1890:2–10; 2058:23–2059–1; Frieder TR 1451:9–13.)

21. Hardware design such as exhibits 20–24 can be compared to drawing a picture or a blueprint of a piece of hardware. Exhibit AF, the original microcoding sheet, is an example of what happens when software or microcode is written. (McKevitt TR 454:25–455:14.)

22. Many computer programs of all types are stored in Read Only Memory (ROM). (Frieder TR 1463:8–13.) (Frieder TR 1500:8–25.)

23. The storage modality of a computer program does not change the nature of the program. (Frieder TR 1464:3–6.)

24. The loading of an 8086 program into a ROM is accomplished in the same manner as would attend upon the loading of an application program into a ROM. (McKevitt TR 463:1–12.)

25. The control signals generated in a nonmicroprogrammed computer perform the same kind of tasks generated in a microprogrammed computer. (Frieder TR 1456:5–1457:1.)

26. Some computers are microprogrammable by users. (House TR 689:24–690–23; Frieder TR 1470:7–12; 1472:10–13.)

27. In the Nanodate QM–I machine the microprogram in the machines could be done by the manufacturer or by the user. (Frieder TR 1500:8–25.)

28. In the Nanodate QM–I machine when microprogrammed by the user, that which was written by the user was a computer program (Frieder TR 1501:1–6.)

29. In the Nanodate QM–I the machine could be made to emulate the 8086 by means of microprogramming. (Frieder TR 1502:2–6.)

30. The methodology employed in the creation of microcode is to the court indistinguishable from that employed in the creation of any computer program.

## FORFEITURE OF COPYRIGHT

31. Defendant has always marked with copyright notice the 8086/88 products marketed and distributed directly by it. Mr. House testified credibly that he had examined documentation used in the manufacturing process of those works, had made personal visual observations of the markings and had made personal observations of parts and photographs of the die. (House TR 692:21–693:2.)

32. At all relevant times defendant had a policy requiring licensees of the 8086/88 products to mark with copyright notice.

33. During times relevant to this case defendant licensed the right to manufacture and distribute 8086/88 products to twelve licensees.

Each of the license agreements contained an express marking provision except those granted to plaintiff, Mitsubishi and Fujitsu.

594

34. A license agreement was executed between defendant and Oki Electric which was effective July 17, 1985. (Ex.EU.) That agreement contains an express marking requirement.

35. Prior to the execution of the license agreement Oki Electric distributed no 8086/88 product prior to the second quarter of 1985, and during that quarter distributed a small amount of that product. (Ex. GU.)

36. The failure to include express marking requirement provisions in the NEC, Mitsubishi and Fujitsu license agreements was the result of inadvertence and mistake, and not the result of a lack of policy or a deliberate non-enforcement of policy. (Testimony of Borovoy, TR 586:9–17; Testimony of Dunlap, TR 919:19–25; 920:8–15; 922:1–7.)

37. Licensee NEC was discovered not to be marking copyright in February or March, 1985. (House TR 694:10–12.)

38. Shortly thereafter it was discovered that licensees Fujitsu and Mitsubishi were not marking copyright on licensed products. (House TR 695:18–22.)

39. Upon discovery of failure on the part of the three licensees to mark copyright, David House as Vice President and General Manager of the microcomputer group of defendant instructed the Business Development Department of defendant to obtain an immediate marking agreement from NEC and to audit other licensees to determine whether or not they were marking. (House TR 695:10–21.)

40. Defendant obtained written commitments to mark copyright on licensed products from Fujitsu and Mitsubishi. (House TR 695:23–25; 696:1–21; Ex. DB, DD, DE.)

41. In August, 1984, Mr. Yamamoto of plaintiff NEC stated to Mr. Dunlap, General Counsel of defendant that he (Yamamoto) believed that plaintiffs were marking copyright on licensed 8086/8088 products, but that he would investigate. (House TR 702:1–25; 703:1–16.) Mr. Hinkley said he or someone else at NEC would reply. (Hinkley TR 848:20–849:2.)

42. Following the meeting of August, 1984, no investigation of copyright marking was conducted by NEC until the spring of 1985, because Mr. Hinkley, General Counsel of plaintiffs, forgot to conduct it. (Hinkley TR 865:18–866:14.)

43. Plaintiffs and defendants entered into a stipulation with respect to marking on August 16, 1985, which stipulation contained in part an agreement that any further publication without marking on the part of plaintiffs would not, adversely affect defendants' position under 17 U.S.C. § 405(a)(2). (Ex.FK.)

44. In spring of 1985, several thousand copyright stickers were sent by defendant to major distributors of plaintiffs' products in the United States and to Fujitsu and Mitsubishi, with instructions that they be placed upon incorrectly marked products. (House TR 706:9–20; Ex.AFA.)

45. Distributors were trained to apply stickers to microprocessors. (House TR 708:15–709:10.)

46. Oki Electric was authorized as of April 20, 1984, to manufacture 80C86/88 microprocessors under INTEL'S copyrights. Any 80C86/88 microprocessors distributed by Oki Electric before April 1, 1985, were not marked with copyright notice. All 80C86/88 microprocessors distributed by Oki Electric after or on April 1, 1985, were marked with copyright notices. (Ex.GU.)

47. Mitsubishi was authorized as of April 20, 1984, to manufacture 8086/88 microprocessors under INTEL'S copyrights. Any 8086/88 microprocessors distributed by Mitsubishi on or before July 5, 1985, were not marked with copyright notice. All 8086/88 microprocessors distributed by Mitsubishi after July 5, 1985, were marked with copyright notice. (Ex.GU.)

48. Fujitsu was authorized as of August 24, 1981, to manufacture 8086/88 microprocessors under INTEL'S copyrights. Any 8086/88 microprocessors distributed by Fujitsu on or before July 11, 1985, were not marked with copyright notice. All 8086/88 microprocessors distributed by Fu-

jitsu after July 11, 1985, were marked with copyright notice. (Ex.GU.)

49. By purchasing and examining chips from distributors, defendant discovered for the first time in February or March of 1985 that plaintiff and Fujitsu had not marked copyright on some of the microprocessors manufactured by them, and shortly thereafter discovered that Mitsubishi was not so marking. (Moore TR 115:18–22; House TR 695:11–15; 693:4–25; Dunlap TR 894:4–10; 921:1–6.)

50. Defendant registered the INTEL microprogram within five years after the publication without notice by Mitsubishi, Fujitsu and Oki. (Undisputed fact, *supra.*)

51. Tape has been commonly used on semiconductor chips for the purpose of sealing the window, and the use of such stickers has been a common practice in the past and presently. (Marren, TR 2653:11–20; House TR 709:4–8.)

52. Plaintiff began selling UPD8086 and UPD8088 in 1981. Those products were bit for bit copies of 8086/88.

53. Contentions of mismarking by AMD, Harris and Matra Harris and purported issues relating thereto are not supported in the evidence.

54. 10.3% of the total distribution of 8086/88 product during relevant times was not marked with notice of copyright.

## CONCLUSIONS OF LAW

1. Defendant's certificates of copyright registration constitute *prima facie* evidence of the validity of defendant's copyrights, and plaintiffs have the burden of overcoming the presumption of validity. 17 U.S.C. § 410(c); *Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 523 (9th Cir.1984).

2. Plaintiff has not overcome the presumption of validity by a preponderance of the evidence.

3. Defendant's 8086/88 microcode is a set of statements or instructions used directly or indirectly in a computer to bring about a certain result. 17 U.S.C. § 101.

4. Defendant's 8086/8088 microprograms are computer programs within the meaning within the Copyright Act. 17 U.S.C. § 101; cf. *Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521 (9th Cir.1984); cf. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir.1983), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984).

5. The function performed by defendant's microprograms by defendants 8086/8088 microprograms does not affect their status as copyrightable subject matter. Cf. *Apple Computer, Inc. v. Formula International, Inc.*, 562 F.Supp. 775 (C.D.Cal.1983).

■ 6. Defendant's microprograms are copyrightable literary works expressed in words, numbers or other numerical symbols or indicia. 17 U.S.C. § 101; cf. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir.1983).

7. Defendant made a reasonable effort to add notice to all copies of its 8086/8088 microprograms distributed in the United States after discovery of the omission by its licensees to properly mark. 17 U.S.C. § 405(a)(2).

8. Defendant made registration of its copyrighted works within five years after publication without notice and has made reasonable effort to add notice to all copies distributed to the public in the United States after discovery of the omission to publish notice.

■ In so doing, defendant is entitled to be excused of omission to publish notice of copyright pursuant to 17 U.S.C. § 405(a)(2).

9. Defendant is not entitled to be excused of omission to publish notice of copyright pursuant to 17 U.S.C. § 405(a)(1).

10. The works encompassed in copyright registrations TX998–844, TX963–802, TX953–801, TXU521–507, TXU186–617 and TXU186–616 are protected by good and valid copyright which has not been forfeited.