RELIGIOUS TECHNOLOGY CENTER, et al., Plaintiffs,

v.

Robin SCOTT, et al., Defendants.

RELIGIOUS TECHNOLOGY CENTER, et al., Plaintiffs,

v.

Larry WOLLERSHEIM, et al., Defendants.

Nos. CV 85–711 MRP, CV 85–7197 MRP.

United States District Court, C.D. California.

March 9, 1987.

Gary Bright, Bright & Powell, Carpinteria, Cal., Charles B. O'Reilly, Green, O'Reilly, Broillet, Paul, Simon, McMillan, Wheeler & Rosenberg, Los Angeles, Cal., Michael J. Treman, Santa Barbara, Cal., Jerold Fagelbaum, Shea & Gould, Los Angeles, Cal., for defendants.

Joseph A. Yanny, Herzig & Yanny, Los Angeles, Cal., John G. Peterson, Peterson & Brynan, Beverly Hills, Cal., Earle C. Cooley, Cooley, Manion, Moore & Jones, Boston, Mass., for plaintiffs and counterdefendants.

## MEMORANDUM OF DECISION

PFAELZER, District Judge.

### I. INTRODUCTION

Plaintiffs' application for a preliminary injunction under 17 U.S.C. § 502(a) was argued on January 26, 1987 before the Honorable Mariana R. Pfaelzer. Having considered the oral and written arguments made and the evidence filed in this case, the Court has concluded that plaintiffs have not made a sufficient showing of likelihood of success on the merits, and have not shown that the balance of hardships justifies the preliminary injunction they seek.

### II. BACKGROUND

This case originated in the theft in 1983 by Robin Scott of certain documents belonging to the plaintiff Church of Scientology International, Inc. ("the Church"). Plaintiffs and some defendants (David Mayo, The Church of the New Civilization, defendants Haber, Nelson, Zegel, Hartog and Reisdorf—collectively "the new Church") regard these documents as religious scriptures, embodying part of the advanced technology practiced by Scientologists. In particular, the documents stolen included a series of bulletins describing a procedure known as "New Era Dianetics for Operating Thetans," "NED for OTs" or "NOTs" ("NOTs"). These stolen materials were eventually returned to the Church, but not, plaintiffs charge, before they had been passed to and copied by various defendants.

Plaintiffs brought this suit in 1985, alleging, *inter alia,* theft of trade secrets and RICO violations. At that time, plaintiffs sought and were granted a preliminary injunction prohibiting use by the new Church of materials derived from the stolen documents. Defendants appealed the granting of the preliminary injunction and, in August 1986, the Ninth Circuit ruled that the injunction must be dissolved because injunctions are not available to private plaintiffs under civil RICO and because the documents at issue, as religious scriptures, did not have the independent economic value required to be protected by California's law of trade secrets. *Religious Technology Center v. Wollersheim,* 796 F.2d 1076, 1088, 1090 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987). The court noted that "the higher level materials at issue in this suit have neither copyright nor trademark protection," *id.* at 1078 n. 2. The court also expressed "no view whether the new Church's materials are copies of the Church materials stolen by Scott," *id.* n. 3.

Following the dissolution of the preliminary injunction, Norman Starkey, as Executor of the Estate of L. Ron Hubbard dba L. Ron Hubbard Library ("the Hubbard Estate"), registered a copyright in the NOTs materials with the United States Copyright Office (Registration Number TXU 257 326, November 10, 1986). On November 20, 1986, the Hubbard Estate executed a license agreement granting plaintiff Religious Technology Center ("RTC") an exclusive license to reproduce, distribute and utilize NOTs and "[t]he right to pursue, litigate, settle, compromise, or deal with in any way, any and all actions and causes of action ... for the infringement or violation of any copyright" in the materials. On December 5, 1986, this Court granted plaintiffs leave to file an amended complaint stating a new claim for copyright infringement. This application for a preliminary injunction under 17 U.S.C. 502(a) followed.

## III. DISCUSSION

To obtain a preliminary injunction, plaintiffs must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in plaintiff's favor. *Apple Computer, Inc. v. Formula International, Inc.,* 725 F.2d 521, 523 (9th Cir.1984). The more this balance of hardships weighs against the movants and in favor of defendants, the more robust must be the showing of movants' likelihood of success on the merits to justify an injunction. *See Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 502 (9th Cir.1980).

### A. *Likelihood of Success on the Merits*

Defendants argue that plaintiffs have no more than a remote chance of success on the merits. They base this argument on two grounds: first, that the copyright is invalid; and second, that the new Church's materials do not infringe the NOTs materials.

### 1. *The Validity of Plaintiffs' Copyright*

■ Plaintiffs' certificate of copyright registration is *prima facie* evidence of the validity of the NOTs copyrights, 17 U.S.C. § 410(c). Defendants have the burden of overcoming this presumption of validity, *Apple* at 523. Defendants attempt to carry this burden by pointing, first of all, to the testimony of defendant Mayo at the evidentiary hearing before the first injunction was issued that he and not L. Ron Hubbard was the author of the NOTs materials. The NOTs copyright registration application ("the application") lists L. Ron Hubbard as the author of the work in question, and defendants thus hope to raise sufficient doubt as to the truthfulness of the application for registration to overcome the presumption of the copyright's validity. However, there are a number of problems with Mayo's testimony, not the least of which is that the evidence shows him to have publicly attributed the NOTs materials to L. Ron Hubbard on more than one occasion, *see, e.g.,* Reporter's Transcript, November 21, 1985, at 34. Also, this Court did not find Mayo to be a credible witness. Even if believed, Mayo's testimony is not inconsistent with plaintiffs' application.

NOTs is registered as a compilation. Mayo indicated that, while a number of people, including L. Ron Hubbard, worked on NOTs, Hubbard revised and approved the final product before it was issued, *id.* at 50–51. Each NOTs series bears a copyright notice reading "Copyright © [date]/by L. Ron Hubbard/ALL RIGHTS RESERVED." Defendants, in short, have not succeeded in rebutting the presumption that L. Ron Hubbard was indeed the author of each NOTs series and of the compilation as a whole. At most, defendants have created some doubt as to whether Hubbard owned the copyright as author or as the employer in a work-for-hire situation, *see* 17 U.S.C. § 201(b).

■ Defendants' other challenges to the validity of the copyright are easily disposed of. Defendants contend that the Hubbard Estate perpetrated a fraud on the Copyright Office by representing the materials as a "secure test" to get around the deposit requirement of 17 U.S.C. § 407(a), 37 C.F.R. Ch. 11 § 202.19. Plaintiffs, however, provide convincing evidence that they applied for and were granted "special relief" from the deposit requirement under 37 C.F.R. § 202.20(d) and did not misrepresent the nature of their materials Defendants also argue that plaintiffs are estopped from seeking this injunction by their failure to assert the copyright claim earlier. However, plaintiffs were not dilatory in the filing of this suit, and haste, rather than delay, marks the registration and assertion of the copyright following the dissolution of the injunction on plaintiffs' other legal theories. The Hubbard Estate cannot be faulted for its failure to register earlier its copyright in unpublished materials that were never meant to be distributed to the public.

### B. *Do Defendants' Materials Infringe the NOTs Copyright?*

Defendants' claim that the new Church materials do not infringe the NOTs materi-
als poses a somewhat more difficult problem. To establish copying by the new Church, plaintiffs must show that the new Church had access to the copyrighted materials and that there is substantial similarity between NOTs and defendants' materials. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977).

■ Clearly, the new Church had access to the NOTs materials. Even if plaintiffs cannot ultimately establish that the new Church received the stolen NOTs package or copies thereof, it is undisputed that Mayo and other officers of the new Church were intimately familiar with NOTs and had earlier assisted in writing or been trained through the use of the NOTs materials. Mayo himself described his efforts to "reconstruct" NOTs from memory in creating the new Church's "Advanced Ability V" ("AAV") materials. Reporter's Transcript, November 21, 1985, 28–30. For the purposes of a claim for copyright infringement, it does not matter whether defendants, if they copied NOTs, did so with the originals in front of them or from memory.

Given defendants' undeniable access to NOTs, the question to be answered is whether AAV is substantially similar to NOTs. This inquiry is complicated by two characteristics of the copyrighted material: (1) NOTs describes a process or procedure which cannot itself be copyrighted, *see Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954); *Baker v. Selden*, 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1879); 17 U.S.C. § 102(b); and (2) NOTs is alleged to be the sacred scripture of a religion. Neither feature, of itself, requires the conclusion that NOTs is not protected by copyright or that AAV does not infringe that copyright, but taken together these features do serve to make the determination more difficult.[1]

Defendants argue that, as a process or procedure, NOTs is not subject to copy-

---

**1.** To make this determination, the Court compared NOTs to the AAV materials contained in Volume 1 of defendants' exhibits in opposition to the first preliminary injunction. This version

of AAV seems to be the final one, and bears a copyright notice, "© Church of the New Civilization 1984."

right protection at all. This assertion by defendants is somewhat disingenuous, since each series of the AAV materials, like NOTs, is clearly marked with a copyright notice. It is, however, true that copyright protection does not extend to the ideas expressed in a work. Presumably, it was for this reason that plaintiffs originally relied on the laws of trade secret, not copyright, as the basis of their suits against defendants. The Church has already failed in its attempt to obtain a preliminary injunction on its trade secret theory. While plaintiffs are not foreclosed from pursuing this theory at trial, see City of Anaheim v. Duncan, 658 F.2d 1326, 1328 n. 2 (9th Cir.1981); 11 Wright & Miller, Federal Practice and Procedure, Civil § 2962 at 630–31 (1973), it cannot form the basis of the injunction they now seek.

■ Even if an idea, procedure or discovery is in the public domain, it is well established that the expression of the idea can be protected by copyright, see, e.g., Sid & Marty Krofft at 1163. The nature of the procedure described in NOTs and in AAV, however, requires a certain level of similarity of expression. The NOTs procedure, briefly, treats a particular condition of the adherent through the use of a structured sequence of questions, dictated in part by the adherent's response to the questions as registered on a device known as the Hubbard E-meter. It appears that the wording of the questions must conform to a standard; in addition, there is a fairly large vocabulary of specialized terminology used to describe phenomena that might be encountered during the procedure. It can also be assumed that the use and behavior of the needles or dials on an E-meter can be described only in a limited number of similar ways. Similarities of expression dictated by the nature of the process described do not constitute infringement, cf., Frybarger v. International Bus. Mach., Inc., 812 F.2d 525, 529–530 (9th Cir.1987); Apple Computer, Inc. v. Formula International, Inc., 725 F.2d 521, 525 (9th Cir. 1984). In comparing NOTs with AAV, this Court has taken care to look for similarities that are not the result of the similarity of the procedures being described. Due in part to the indirect style in which both works are written, there is ample text to compare.

■ The religious nature of the ideas expressed in NOTs and AAV also renders comparison difficult. AAV is not identical to NOTs, but substantial similarity, not identity, is all that plaintiffs must show. The test for substantial similarity is twofold: first, an "extrinsic" test is applied to determine whether the ideas expressed in the two works are similar; and second, an "intrinsic" test is used to determine whether, given similarity of ideas, the expression of these ideas is substantially similar, Sid & Marty Krofft at 1164. The extrinsic test may require analytic dissection of the work or even expert testimony, id.

■ Defendants argue that this Court cannot apply the extrinsic test to determine whether NOTs and AAV express the same or similar ideas, because to do so would impermissibly entangle the Court in determining religious doctrine, see, Serbian Orthodox Diocese for the United States of America and Canada v. Milivojevich, 426 U.S. 696, 708–09, 96 S.Ct. 2372, 2380, 49 L.Ed.2d 151 (1976); Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem. Presby. Church, 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969). Defendants' argument is a troubling one, because it seems to lead to the conclusion that religious scriptures cannot be protected by copyright. This result is untenable, however. Where the statutory formalities have been met, scriptures must receive the same protection as other works. Not only would any other result offend the first amendment's guarantee of freedom of religion, it would also inevitably involve courts in deciding whether various works are or are not religious scriptures—an inquiry of even greater constitutional infirmity. Where "neutral principles of law" are available to resolve religious property disputes, see Jones v. Wolf, 443 U.S. 595, 604, 99 S.Ct. 3020, 3026, 61 L.Ed.2d 775 (1979), courts can, and in this case must, apply them.

■ Defendants also overstate the constitutional pitfalls involved in comparing these two works. This Court need not evaluate the religious significance of any differences between NOTs and AAV. It is only necessary to determine whether such differences exist and, if they do, whether similarities or differences predominate. The inquiry is one of linguistic, not theological, interpretation. The difficulty of this inquiry is also reduced by the nature of the procedures described in NOTs and AAV. Both works deal, not with abstract matters of religious principle, but with concrete applications laid out step-by-step. If A happens, the student auditor is told, do B. At this level of examination, the similarities between NOTs and AAV overwhelm any differences between them. The AAV and NOTs procedures treat the same conditions in the same ways by use of the same commands and steps. The two works clearly express substantially the same ideas.

Defendants, in any event, have rendered the application of the extrinsic test unnecessary by admitting, at least for the purposes of this application for a preliminary injunction, that the procedure described in AAV is substantially similar to that described in NOTs. For example, the Advanced Ability Center ("AAC"), run by the new Church, published a price list in its *Journal* in which the "Name Used by Church of SCN" is given for each "Name of Service at AAC," *see, e.g.*, The Journal of the Advanced Ability Center, Vol. 1 No. 4, May-June 1984 at 31. On this list, under "Training," item seven is the AAC's "Advanced Ability 5 Pro Auditor's Crse." The corresponding Church of Scientology entry is "NOTs Auditor Course." As another example, at the November 21, 1985 hearing on plaintiff's first application for a preliminary injunction, a videotape was played in which defendants Mayo and Zegel both said that the techniques and procedures offered at the AAC were standard Scientology services, Reporter's Transcript at 56–57, but had to be given different names because the Church of Scientology had registered their trademark in the name "Scientology," *id.* at 58–59. On the tape, Zegel explained

that "[i]t's not an interpretation or a reinterpretation of the material; a very precise application and exactly the way the material was laid out, just legally we will be in jeopardy if we call it Scientology," *id.* at 59. Mayo claimed that the tape was made under false pretenses, but did not deny the truth of the statements made in it.

Having determined that NOTs and AAV express substantially the same idea, the Court must apply the intrinsic test for similarity of expression. *See Sid & Marty Krofft*, at 1164. Defendants argue that, by this test, the two works are not substantially similar because NOTs contains more headings than AAV, the discussions of individual issues vary in length between the two works, and the order and sequence of subject matter are not alike. New Church defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss at 7. This analysis, however, resembles the extrinsic test, *cf. Sid & Marty Krofft* at 1166; the intrinsic test depends not on dissection of the works, but on "the response of the ordinary reasonable person," *id.* at 1164.

Keeping in mind the similarities required by the subject matter of the two works, and scrupulously avoiding any evaluation of the religious doctrine contained therein, this Court cannot conclude that the ordinary reasonable person would find NOTs and AAV substantially similar in expression. This finding is different from but not inconsistent with the Court's finding of substantial similarity that led to the imposition of the first preliminary injunction in this case in November 1985. At that time, the Court concluded, as above, that the two documents described the same procedure. The Court further concluded, and remains convinced, that nobody could have created AAV without having a copy of NOTs at hand. Such a conclusion does not necessarily imply a finding of substantial similarity of *expression* justifying an injunction under 17 U.S.C. § 502(a).

NOTs and AAV do share a number of similarities of expression. Like NOTs, AAV consists of numbered "series"; while NOTs is apparently in this format because

it was originally issued piecemeal in a series of bulletins as research on the technology progressed, there is no evident reason for AAV to be in this format except to more closely resemble NOTs. While the sequence of topics dealt with in AAV and NOTs is similar, there are differences. Whether the sequence is dictated by the demands of the subject matter is not clear.

■ AAV is written in much the same informal style as NOTs, and the two works have a number of sentences and images in common. For example, NOTs notes that "stress is also a heavy button," NOTs Series 6, page 1, while AAV says that "Stress can be a heavy button," AAV Series 8. In NOTs, certain entities are described as saying "Yah, yah, I'm your nemesis ...," NOTs Series 7, page 3; in AAV they say "'Yeah, I'm your nemesis' or whatever," AAV Series 8. Similarities like these are found throughout the documents. However, the bulk of AAV consists of text not found in NOTs. The actual percentage of text that appears to have been copied verbatim is very small, although a much larger proportion of AAV seems to be a paraphrase of NOTs. In summary, the similarities between the two documents raise serious questions going to the merits of plaintiffs' claim of copyright infringement, but are not so clear as to require a finding of a reasonable likelihood of success.

### IV. *The Balance of Hardships*

■ Since plaintiffs have shown only a possibility of eventual success on their claim of copyright infringement, they must demonstrate that the hardship to defendants that would result from the granting of an injunction is exceeded by the hardship to plaintiffs should their application be denied. *Apple Computer, Inc. v. Formula International Inc.*, 725 F.2d 521, 523 (9th Cir.1984). A preliminary injunction could and very likely would cause irreparable injury to defendants. Defendants and the adherents of the new Church are likely to be prevented from practicing their religion by the issuance of an injunction. While in theory the new Church would be permitted to practice—and could not, of course, be enjoined from practicing—the auditing procedures described in AAV, in practical effect they would find this practice significantly chilled by the fear that whatever materials they used might violate an injunction. The first preliminary injunction in this case apparently put the new Church's Advanced Ability Center out of business. A very strong showing of hardship to plaintiffs would be required to justify the imposition of an injunction so severely affecting defendants' constitutional rights to practice their religion unhindered.

Balanced against this harm of constitutional proportions is plaintiffs' fear that their confidential scriptures will be made public. However, defendants have repeatedly expressed their own opposition to the publication of the advanced technology of Scientology, so the risk of this injury seems remote. In addition, if it was defendants' intention to make the technology public, they could do so without infringing plaintiffs' copyright by creating and publishing a noninfringing description of the procedure.

Plaintiffs also expect to suffer pecuniary damage through the loss of parishioners' fees if the lack of an injunction allows the new Church to lure adherents away by offering the same services more cheaply. It is apparent that many new Church adherents were once members of the Church, and that there is competition for members and for the fees that they pay for services, between the two groups. Until enjoined in November 1985, defendant Mayo and the new Church offered adherents standard Scientology services for less than the prices charged by the Church. The Church will undoubtedly lose revenues if the new Church is once again able to compete for parishioners. It is unclear how much, if any, of this loss could be traced to copyright infringement and how much to defendants' ability to offer the same procedures. In any event, monetary damages are available to redress such injury.

Finally, plaintiffs fear the loss of control over the integrity of their materials. They claim that defendants are modifying the procedure by revising NOTs, resulting not

only in spiritual harm to adherents of the new Church, but also in damage to the Church's reputation. The new Church clearly advertises its procedure to be the same as that offered by the Church; if the procedure actually delivered by the new Church is somehow less effective than that offered by the Church, plaintiffs' reputation may suffer injury. Again, however, this injury would result more from defendants' ability to employ a procedure not subject to copyright protection than from infringement of the copyright.

On balance, it appears that the potential hardship from interference with defendants' religious freedom that would result from a preliminary injunction in this case exceeds the possible injury to plaintiffs if the injunction does not issue. In the absence of a showing of a reasonable likelihood of plaintiffs' success on the merits of their claim of copyright infringement, plaintiffs' application for a preliminary injunction must be, and hereby is, denied.

IT IS SO ORDERED.