947 F.2d 950
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mitchell LANDAU, a minor, Through his parent Mark LANDAU as
guardian ad litem; Mark Landau, individually,
Plaintiffs-Appellants,
v.
LONG BEACH UNIFIED SCHOOL DISTRICT, Defendant-Appellee.
 No. 91-55211.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 5, 1991.
Decided Oct. 28, 1991.
 
 Before GOODWIN, PREGERSON and ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Mark Landau and his minor son, Mitchell, sued under the Individuals With Disabilities Education Act, 20 U.S.C. §§ 1400-1485, to force the Long Beach Unified School District to pay for transportation to and special education in a private school selected by Mr. Landau. They appeal an order denying a preliminary injunction. We affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 Mitchell Landau is fourteen years old. Although his intelligence has been called above-average, he suffers from a learning disorder known as developmental dyslexia. Mitchell was first identified by the Los Angeles Unified School District as learning disabled six years ago.
 
 
 4
 Mitchell transferred from Los Angeles to the Long Beach Unified School District (the "District") where he was placed in a Resource Specialist Program. Mitchell continued in the Long Beach program until March of 1988, when his father enrolled him in a regular education program. When Mitchell began having behavioral problems in the regular classroom, an Individualized Education Program ("IEP") meeting was scheduled to consider another placement. Since that time, Mitchell's father has been unable to agree with the District about the appropriate scholastic placement for Mitchell. Rather than accept the District's suggested placement, Mr. Landau removed Mitchell from school in August of 1990. Since that time, Mitchell has attended no school.
 
 
 5
 During the course of the administrative proceedings, Mr. Landau retained Gail Stein, a learning disabilities specialist, to evaluate Mitchell. Stein concluded that Mitchell's written language difficulties, along with the discrepancies between his intellectual ability and his academic progress, indicated "developmental dyslexia with an attention deficit." Stein recommended that Mitchell receive intensive individualized instruction geared to his specific needs.
 
 
 6
 Stein recommended three placement options for Mitchell: (1) a private school for learning disabled students that would offer Mitchell "a total program in one setting without a possible failure situation which would meet all of his needs--social, emotional, and academic"; (2) intensive one-on-one work with a learning disabilities specialist geared to Mitchell's specific needs; or (3) an intensive remedial program with a specialist in public school for at least half of Mitchell's day.
 
 
 7
 In October of 1989, an administrative hearing was held to determine the appropriate educational placement for Mitchell for the 1989-90 school year. The District recommended two non-public schools: the Switzer Center ("Switzer") or Canyon Verde. Switzer is located in Torrance, California, about fifteen miles from Mitchell's Long Beach home. The majority of Switzer students have learning disabilities and suffer from emotional problems. Approximately 20 of the 75 students are dyslexic. Many of the students at Switzer have been educationally classified as "severely emotionally disturbed."
 
 
 8
 Hearing Officer Fait found that if Mitchell attended Switzer, he would be placed in a class of twelve and would participate with one other student in a multi-sensory reading program for dyslexics known as the "Herman Program." Fait also found that none of the other children in Mitchell's class would have serious behavioral problems. There was no objective evidence to the contrary.
 
 
 9
 Mr. Landau objected to Switzer, alleging that Switzer was designed primarily for severely emotionally disturbed students. Stein testified that Switzer would not be appropriate for Mitchell because of the mix of learning disabled and severely emotionally disturbed students. She believed an appropriate placement would be a school that accepted only dyslexic students.
 
 
 10
 Mr. Landau argued for two alternatives, one of which was Landmark West School. He alleged that Landmark, located in Encino, California, specializes in average and high potential dyslexic students. All of the Landmark students are said to be dyslexic, and none is said to have serious behavioral problems.
 
 
 11
 Fait agreed that Landmark's program was best for dyslexic students, but concluded that Mitchell's travel time to and from Encino, estimated at three and a half to four hours per day, would be a drawback. He also found it difficult to determine whether Mitchell's individual needs were compatible with those of Switzer's students. Nonetheless, he ruled that either of the schools recommended by the District (Switzer or Canyon Verde) was appropriate for Mitchell.
 
 
 12
 On December 4, 1989, the District notified Mr. Landau that it had selected Switzer as Mitchell's placement. On January 26, 1990, an IEP meeting was held to implement the placement, but Mr. Landau refused to enroll Mitchell at Switzer. Instead, Mr. Landau hired Stein to tutor Mitchell at home. When summer arrived, Mr. Landau enrolled Mitchell at Landmark for a four-week session. Mr. Landau then requested another hearing, where he sought to have Mitchell's placement changed to Landmark. He also sought reimbursement for the costs of Mitchell's summer session at Landmark.
 
 
 13
 In October of 1990, a second hearing was held to determine whether Mitchell's placement should be changed and whether the District was required to reimburse Mr. Landau for the cost of Mitchell's attendance at Landmark over the summer. Mr. Landau continued to argue that Switzer was inappropriate for the reasons he had advanced earlier. Because Mitchell has never had an educational exposure to Switzer, Mr. Landau's objections to that school were necessarily speculative.
 
 
 14
 Mr. Landau described the progress Mitchell had made in four weeks at Landmark as a "miracle." He testified that Mitchell became organized, completed his homework without complaining, discovered he was capable of learning, and improved his self-esteem. Carol Kerr, a teacher at Landmark, testified at the hearing that Mitchell was friendly, outgoing, very sociable, well-liked by teachers and peers, and responded well to intervention. Kerr emphasized that although Mitchell was learning disabled, he had high cognitive potential and definitely was not emotionally disturbed.
 
 
 15
 Janet Switzer, a clinical psychologist and the director of the Switzer Center, testified on behalf of the District. She indicated that all Switzer students were learning disabled and that most had some emotional problems. She testified that 22 were dyslexic. Ms. Switzer stated that the class in which Mitchell was most likely to be placed consisted of eleven students, six of whom were dyslexic. One student in the class had serious emotional problems. Ms. Switzer believed her school would be able to meet all of Mitchell's needs.
 
 
 16
 Hearing Officer Cote ruled that because Switzer had been deemed an appropriate placement in a previous hearing, and because Mr. Landau was attempting to change the status quo, Mr. Landau bore the burden of proving Switzer was no longer appropriate. Cote concluded that Mr. Landau had failed to prove that any significant changes had occurred in either Mitchell's condition or Switzer's program that would justify a change in placement. Cote also ruled that Mr. Landau had failed to show that the District had refused to provide appropriate summer school services. Accordingly, Cote denied Mr. Landau's requests for a Landmark placement and for reimbursement.
 
 
 17
 Appellants then filed a complaint in the district court and sought a preliminary injunction to require the District to place Mitchell at Landmark and pay for his attendance. In support of their motion, appellants again submitted testimony by their expert. Stein repeated her earlier testimony on why she thought Landmark was the appropriate placement for Mitchell.
 
 
 18
 Appellants argued that Fait did not review the placement options under California's regulations, which, they alleged, commit the state to standards higher than those required under federal law. The record does not show that the hearing officer articulated that he was applying any special standard, but the record likewise does not show that the hearing officer, or anyone engaged in the decision making process, was unaware of the state regulations under which they were operating.
 
 
 19
 In opposition to Mr. Landau's motion, the District offered a declaration by Eloise Thompson, the District's Associate Director of Special Education. Thompson stated that Mitchell's instructional group at Switzer would be selected from 23 students in two different classes, twelve of whom were dyslexic and fifteen of whom were identified as emotionally disturbed. She explained that these students show a range of behaviors, including withdrawal or depression but not assaultive or schizophrenic behavior. The IQs of the students in the group range from 75 to 135. Thompson stated that Mitchell would receive Herman Program instruction for 50 minutes per day.
 
 
 20
 The district court found that appellants had exaggerated the possible negative effects of attending Switzer, that Switzer had been established as an appropriate facility in two prior hearings, and that Mr. Landau's decision to keep Mitchell out of school rather than send him to Switzer was the only factor that posed a serious problem to Mitchell's education.
 
 DISCUSSION
 
 21
 The Individuals With Disabilities Education Act creates a substantive right to public education for disabled students. Honig v. Doe, 484 U.S. 305, 310 (1988); Board of Educ. v. Rowley, 458 U.S. 176, 180-83 (1982). The Act provides federal funding to assist states in educating disabled children. To qualify for federal funds the state must have in effect "a policy that assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1).
 
 
 22
 The Act requires that an "individualized educational program" be designed for each child. 20 U.S.C. §§ 1401(18)(D) and 1414(a)(5). The IEP is prepared by local school district representatives, the child's teacher, and the child's parents. It describes the child's current performance and sets out specific goals, recommended instruction methods, and suggested services. 20 U.S.C. § 1401(20)(A)-(F). The IEP must be reviewed and, if necessary, revised annually to ensure that school districts tailor the "free appropriate public education" they provide to the unique needs of each child. 20 U.S.C. § 1414(a)(5); Honig, 484 U.S. at 311. Parents who are dissatisfied with their child's IEP may seek administrative review and, if necessary, file a civil action. 20 U.S.C. §§ 1415(b)(2), (c), (e)(2).
 
 
 23
 Our review of the district court's decision is limited. We may reverse only if the district court abused its discretion or if the court based its decision on an erroneous legal standard or on clearly erroneous findings of fact. Apple Computer, Inc. v. Formula Int'l, Inc., 725 F.2d 521, 523 (9th Cir.1984). We find no such errors.
 
 
 24
 "To obtain a preliminary injunction, a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor." Id.
 
 
 25
 A preliminary injunction, which effectively would have declared that the parent is right and that the district is wrong when only one of the schools under examination had been tried, would have been a substantial displacement of the school board's authority. The district court was presented with testimony from interested witnesses on both sides, and it found that the Landaus and their retained experts had not carried the burden of persuasion that they were right and the District and its retained experts were wrong. This is not the sort of decision that can categorically be said to be an abuse of discretion.
 
 1. Educational standards
 
 26
 The district court held that appellants had failed to show a serious question going to the merits because Switzer had been deemed an appropriate placement for Mitchell at two prior administrative hearings. Appellants argue that the hearing officers, in making their determinations, applied an erroneous legal standard because they ignored California regulations that set a higher standard for an "appropriate education" than the federal standard articulated by the Supreme Court in Rowley.
 
 
 27
 The Court in Rowley held that a "free appropriate public education" under the Act requires that the education "be sufficient to confer some educational benefit upon the handicapped child." Rowley, 458 U.S. at 200. The Court recognized that the Act was designed to provide a "basic floor of opportunity" consisting of "access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." Id. at 201.
 
 
 28
 The Act specifically requires that the "appropriate education" provided by the state "meet the standards of the State educational agency." 20 U.S.C. § 1401(18)(B). This section has been interpreted to incorporate state educational standards that are more demanding than the standard set out in Rowley. See Students of California School for the Blind v. Honig, 736 F.2d 538, 545 (9th Cir.1984), vacated as moot, 471 U.S. 148 (1985); see also Geis v. Board of Educ., 774 F.2d 575, 581 (3rd Cir.1985); Town of Burlington v. Department of Educ., 736 F.2d 773, 789 (1st Cir.1984), aff'd on other grounds, 471 U.S. 359 (1985).
 
 
 29
 Acting pursuant to the intent of the California Legislature, Cal.Educ.Code § 56000 (West 1989), the California Department of Education promulgated regulations to govern special education programs. See 5 Cal.Code Regs. §§ 3000-3082 (1991). California law requires that an "appropriate education" provide "the equal opportunity for each individual with exceptional needs to achieve his or her full potential, commensurate with the opportunity provided to other pupils." 5 Cal.Code Regs. § 3001(b).
 
 
 30
 Appellants argue that the California regulation sets a higher standard than Rowley regarding a "free appropriate public education," that this standard is incorporated into the federal statute by virtue of 20 U.S.C. § 1401(18)(B), and that the district court and hearing officers improperly applied the Rowley standard rather than the more protective state standard.
 
 
 31
 The problem presented by this alleged conflict between California's standard and Rowley has been mooted by an amendment adopted by the state legislative assembly and signed by the governor on July 27, 1991:
 
 
 32
 It is also the intent of the Legislature that nothing in this part shall be construed to set a higher standard of educating individuals with exceptional needs than that established by Congress under the Individuals with Disabilities Education Act....
 
 
 33
 1991 Cal.Legis Serv. 1371 (West). Thus, the question we face on appeal is whether the district court's finding that there was no serious question going to the merits otherwise constituted an abuse of discretion or was based on clearly erroneous factual findings. We conclude that it was not.
 
 
 34
 The district court heard only subjective testimony and arguments. It was not compelled to conclude that only Landmark, specifically designed for dyslexics like Mitchell, satisfies the California and Rowley standards. The Switzer program admittedly does not offer an exclusively tailored program for students whose only problem is dyslexia. On the other hand, Switzer is substantially closer to Long Beach and there is no convincing evidence that the program which it does offer will fail to measure up to state and federal standards. While there was vague and nonspecific testimony that some students at the Switzer school are emotionally disturbed, there is no objective evidence that the school is unable to deal with their problems or that the presence of such students has a negative impact on the education of others. Balancing hardships in this context becomes speculative. Not having given Switzer an opportunity to be tested, no one really knows how Mitchell's educational progress might compare after travel considerations are given effect.
 
 2. Mainstreaming
 
 35
 Appellants argue that in approving Mitchell's placement at Switzer the hearing officers ignored the requirement that a disabled student be "mainstreamed"--that is, placed in the least restrictive setting consistent with his needs. See 20 U.S.C. § 1412(5)(B); 34 C.F.R. §§ 300.550-.556 (1990). All parties agree, however, that Mitchell should be placed in a non-public school for disabled students. The purpose of the mainstreaming preference is to integrate disabled students with non-disabled students so far as possible. See Honig v. Doe, 484 U.S. at 311. Because sending Mitchell to either Switzer or Landmark would not integrate him with non-disabled students, mainstreaming simply is not an issue in this case.
 
 3. Burden of proof
 
 36
 Appellants also argue that Hearing Office Cote erred in placing the burden of proof on appellants at the second hearing to show that Switzer was no longer an appropriate placement. The "stay put" provision of the Act, 20 U.S.C. § 1415(e)(3), provides that during the pendency of any proceedings, unless the state and the parents otherwise agree, "the child shall remain in [his or her] current educational placement." Switzer was Mitchell's current placement, despite the fact that his father had not allowed him to attend. The district court did not err in holding that the "stay put" provision creates a presumption in favor of a disabled child's current placement, so that the party seeking to change the placement bears the burden of proof. See Honig v. Doe, 484 U.S. at 328.
 
 
 37
 In conclusion, we cannot find that the trial court abused its discretion in denying the appellants a preliminary injunction.
 
 
 38
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3