**REEBOK INTERNATIONAL LIMITED, et al., Plaintiffs,**

**v.**

**Roberto SEBELEN, et al., Defendants.**

**Civil No. 94–2677 (SEC).**

United States District Court, D. Puerto Rico.

July 2, 1996.

Luis Sánchez–Betances, Sanchez Betances & Sifre, San Juan, PR, Harley I. Lewin and James H. Donoian, Lewin & Laytin, P.C., New York City, for Plaintiffs.

José A. Figueroa–Morales, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Plaintiffs bring this action pursuant to the Lanham Act, 15 U.S.C. § 1051, et. seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98–473. Plaintiffs allege that defendants have engaged in the

systematic manufacture, import, export, sale and distribution of counterfeit REEBOK footwear from Asia through the United States. They also allege that defendants conducted business activities within Puerto Rico and the United States, including the importation of goods into Puerto Rico[1], maintaining active bank accounts in Puerto Rico and New York,[2] and directing plaintiffs' investigators to deposit funds into defendants' Puerto Rico bank account, specifically relating to the purchase of defendants' counterfeit REEBOK footwear.[3]

In addition, plaintiffs allege that defendants shipped their counterfeit REEBOK footwear cargo from Hong Kong to Santo Domingo via shipping route which entailed the discharge of the falsified goods in Los Angeles, California, transporting them across the United States by rail to Miami, Florida, and reloading them aboard a ship to Santo Domingo.[4] Plaintiffs allege that defendants engaged in these activities deliberately and knowingly, in violation of the Lanham Act.[5]

Defendants Roberto Sebelen, George Perez Sebelen; Ranier Sebelen and Almacenes San Juan, CxA, have filed a Motion for Summary Judgment seeking the Court to dismiss this case due to lack of personal jurisdiction over defendants as well as lack of subject matter jurisdiction. **(Docket # 26)** After close analysis of the parties' arguments and applicable law, defendants' motion is **DE-NIED.**

### Summary Judgment Standard

As noted by the First Circuit, summary judgment has a special niche in civil litigation. Its role is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts University School of Medicine,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113

---

1. Statement of Facts ¶¶ 15, 16, 17; Declarations of Sean A. Wallace, January 26, 1996 ¶ 5 ("Wallace Declaration"); Declaration of James F. Perrone, January 25, 1996 ("Perrone Declaration"), ¶ 7.

2. Statement of Facts, ¶ 11; Declaration of Randy Rabenold, January 4, 1996 ("Rabenold Declaration"), ¶ 19.

3. Statement of Facts, ¶ 13; Rabenold Declaration, ¶ 20.

4. Statement of Facts, ¶ 18; Declaration of J. Massoud Messkoub, Jan. 22, 1996, ¶¶ 4–7 ("Messkoub Declaration").

5. Statement of Facts, ¶ 10; Rabenold Declaration, ¶ 19, ¶ 17.

S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources. *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314–315 (1st Cir.1995).

According to Fed.R.Civ.P. 56(c), a summary judgment motion should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir. 1994). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir. 1992). *See also, Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994).

Moreover, this Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932,

936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

## Analysis

### Application of Extraterritorial Jurisdiction Pursuant to the Lanham Act

■ This Court may properly exercise subject matter jurisdiction in this action because defendants shipped counterfeit Reebook shoes through parts of the United States, using the overland freight system of the United States,[6] offered for sale goods bearing trademarks of a United States company,[7] and used their Puerto Rico bank accounts to facilitate their counterfeiting activity.[8]

■ The Lanham Act provides a "broad jurisdictional grant" that extends to "all commerce which may lawfully be regulated by Congress." *Steele v. Bulova Watch Co., Inc.*, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952); 15 U.S.C. §§ 1127. This jurisdictional scope includes the foreign commerce of the United States. *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 503 (9th Cir.1991).

The Lanham Act thus applies to defendants' acts in distributing counterfeit Reebok shoes, since plaintiffs are engaged in the global sale of REEBOK products,[9] including the sale in the Dominican Republic.[10] Defendants' distribution and sales of counterfeit REEBOK products clearly affect United States foreign commerce. *Ocean Garden*, 953 F.2d at 503.

The broad application of the Lanham Act is now widely accepted. *Wells Fargo and Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 427 (9th Cir.1977) (citing *Timberlane Lumber Co. v. Bank of Am. Nat'l Trust and Savings Assoc.*, 549 F.2d 597 (9th Cir.1977) (hereinafter *Timberlane I* )). *See also Bab-*

---

**6.** Statement of Facts, ¶ 18.

**7.** Statement of Facts, ¶ 8; Rabenold Declaration, ¶ 7.

**8.** Statement of Facts ¶ 12; Rabenold Declaration, ¶ 20.

**9.** Statement of Facts, ¶¶ 22, 23, 24; Declaration of Harley I. Lewin, January 10, 1995, ¶¶ 6, 7, 9. ("Lewin Declaration").

**10.** Statement of Facts, ¶ 25, Exhibit 4.

*bit Electronics, Inc. v. Dynascan Corporation*, 38 F.3d 1161 (11th Cir.1994) ("Lanham Act jurisdiction exists even though infringer's sales occurred outside the United States.")

Where the defendants deal in counterfeit footwear between Asian and other countries, even though no counterfeit shoes are distributed in the United States, United States courts have jurisdiction over the defendants under the Lanham Act by reason of their United States banking activities and use of United States commerce. *Timberlane Lumber Co. v. Bank of Am. Nat'l Trust and Savings Ass'n.*, 749 F.2d 1378, 1383 (9th Cir. 1984), *cert. denied*, 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985).

*Bulova* and its progeny stand for the proposition that United States courts have the ability to enforce the Lanham Act against counterfeiters and infringers who use, and benefit from, United States financial institutions, transportation systems and domestic companies, even though the ultimate sale of their falsified goods occurs outside the United States. Defendants' conduct in the present case presents a compelling case to exercise Lanham Act jurisdiction, pursuant to the above mentioned principles.

Miami and Puerto Rico are two major ports through which a substantial quantity of goods are transported on their way to the Dominican Republic and other Latin American countries. Counterfeit goods, such as defendants' falsified REEBOK goods, must pass through United States territory on their route from Asia to the Dominican Republic. Defendants cannot escape liability by reason of the ultimate delivery of their goods to the Dominican Republican rather than to the United States. Plaintiffs argue, and this Court agrees, that to allow defendants to continue this practice would be to completely emasculate the ability of the United States and its courts to regulate commerce and enforce the Lanham Act, respectively.

■ This Court also concludes that it should apply the Lanham Act to the defen-

dants' extraterritorial acts in the Dominican Republic and elsewhere. To determine whether the exercise of extraterritorial jurisdiction is warranted, courts have often followed the guidelines enunciated in *Timberlane I*, which delineated the three-factor balancing test.

First, there must be some effect on American foreign commerce; second, the effect must be sufficiently great to present a recognizable injury to plaintiffs under the federal statutes; third, the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority.

*Timberlane I*, 549 F.2d at 613–615.

Upon careful review of these elements to the above captioned case, we conclude that exercise of federal jurisdiction in this case would be proper.

Plaintiffs clearly meet the first two requirements. The effect on American foreign commerce must be "some effect—actual or intended—on American foreign commerce before the federal court may legitimately exercise subject matter jurisdiction ..." *Id.* at 613; *Reebok International Ltd. v. Marnatech*, 737 F.Supp. 1515 (S.D.Cal.1989), *aff'd by Reebok Int. Ltd. v. Marnatech*, 970 F.2d 552 (9th Cir.1992) ("the sale of counterfeit merchandise in Mexico by defendants sufficiently affects United States commerce.") Defendants in the present case used their Puerto Rico banks [11] to facilitate the financing of the transactions and shipped at least two shipping containers (approximately 18,000 pairs) of counterfeit REEBOK shoes overland through the United States.[12]

They were discharged in Long Beach, California, loaded on-rail, and transported to Miami via Santa Fe Rail Road and CSX Intermodal Railroad, where they were loaded aboard a vessel and shipped to Santo Domingo.[13] Defendants' use of the banking system and overland freight system in the United

---

**11.** Statement of Facts, ¶ 12; Rabenold Declaration, ¶ 20, Exhibit 5.

**12.** Statement of Facts, ¶ 18; Rabenold Declaration, ¶ 9.

**13.** Statement of Facts, ¶ 18; Messkoub Declaration, ¶¶ 6, 7.

States undoubtedly affects American commerce.

Defendants also sold thousands of pairs of counterfeit REEBOK shoes in the Dominican Republic and other areas near Puerto Rico[14], which foreseeably could enter the United States. The Court in *Marnatech* noted there is a constant flow of consumers across the borders of Mexico and the United States. Similarly, there is extensive travel between Santo Domingo and San Juan, Miami and New York. Sales of counterfeit REEBOK products in the Dominican Republic will, as in *Marnatech* and *Ocean Garden,* result in travel of the product to the United States, directly and adversely impacting United States foreign commerce.

Plaintiffs own the trademark REEBOK for footwear in both the United States and the Dominican Republic.[15] Counterfeit REEBOK product sales in the Dominican Republic not only diminish the value of genuine REEBOK footwear but significantly and adversely affect the value of plaintiffs' consolidated holdings. This issue was acknowledged and held to satisfy the second prong of *Timberlane I* balancing test by both the lower court, *Marnatech,* 737 F.Supp. at 1519 and by the Ninth circuit in *Marnatech,* 970 F.2d at 552. The district court noted:

> Not only does it appear that plaintiffs suffer the direct loss of income suffered from the sales of counterfeit goods in Mexico, such sales offend the provisions of the Lanham Act more than the minimal amount required under *Timberlane I* requirements. Such activities, for example, may divert plaintiffs' genuine Mexican sales, decrease the value of the American plaintiffs' consolidated holdings and dam-

age the American plaintiff directly when these goods find their way into the United States." Id. 737 F.Supp. at 1519.

Accordingly, defendants engage in activity which affects American foreign commerce and harms plaintiffs.

The third element of *Timberlane I*— whether the United States' interests compared to those of other nations are sufficiently strong to justify jurisdiction—is a policy question involving the balancing of seven factors.[16]

### 1) Degree of Conflict.

There is no degree of conflict with Dominican law. While there is a criminal case pending in the Dominican Republic regarding defendants' counterfeit REEBOK shoes, the issues will be resolved in the Dominican Court with respect to plaintiffs' trademarks. In fact, upon defendants' motion in the Dominican case, the Dominican court ruled, on December 18, 1995, that there is no conflict between the two cases and that the Dominican case should continue concurrently with the present case.[17]

Defendants acknowledge there is "no conflict with plaintiffs' trademark right in the Dominican Republic or the United States."[18] Moreover, plaintiffs are not entitled to the same civil relief in the Dominican Republic. *See also Marnatech,* 970 F.2d at 557 (the Court found no conflict between plaintiffs' United States case and its simultaneous trademark counterfeiting case in Mexico.)

### 2) Nationality of Parties.

The nationality or allegiance of the parties also weighs in favor of extraterritorial jurisdiction over defendants. Reebok Interna-

---

**14.** Statement of Facts, ¶ 14; Rabenold Declaration, at ¶ 7, 12, 13, 14 and 19.

**15.** Statement of Facts, ¶ 25. Defendants do not dispute plaintiff's trademark rights in either the United States or the Dominican Republic; (Defendants' Motion for Summary Judgment, p. 5, Docket # 26).

**16.** These factors are: 1) the degree of conflict with foreign law or policy; 2) the nationality or allegiance of the parties and the locations or principal places of business of corporations; 3) the extent to which enforcement by either state

can be expected to achieve compliance; 4) the relative significance of effects on the United States as compared with those elsewhere; 5) the extent to which there is explicit purpose to harm or affect American commerce; 6) the foreseeability of such effect, and; 7) the relative importance to the violations charged of conduct within the United States as compared with conduct abroad. *Timberlane I,* 549 F.2d at 614.

**17.** Statement of Facts, ¶ 21.

**18.** Defendants' Motion for Summary Judgment, p. 5.

tional Ltd. is a Massachusetts corporation and Reebok International Ltd. is a United Kingdom corporation, both of whom have substantial contacts with the United States. Defendants also have substantial contacts and business in the United States.

### 3) Enforcement/Compliance.

Third, enforcement in the United States will probably achieve greater compliance. A judgment and injunction against defendants can be easily enforced in the United States through which they transport their counterfeit goods and where they maintain bank accounts and conduct business. As noted earlier by the Court, Puerto Rico and Miami are the major ports through which all goods must pass en route to the Dominican Republic. By cutting off the ability of defendants to use the United States in their illicit counterfeiting activities, this Court can significantly limit the flow of imitation products between Asia and Latin America. Plaintiffs argue, and this Court agrees, that a judgment from the Dominican Court would not prevent defendants from using their bank accounts or transporting the goods through the United States to other jurisdictions.

The remaining factors also weigh in plaintiffs' favor:

### 4) Effects of Defendants' Activities on the United States.

The effect on the United States of defendants' activities is significant. The use of United States banks and transportation services to carry out counterfeiting activities, as well as the harm to and financial effect on a major United States business, creates sufficient effect to warrant exercise of federal jurisdiction. *Ocean Garden*, 953 F.2d at 504; *Marnatech*, 970 F.2d at 557.

### 5) and 6) Purpose and Foreseeability.

Defendants knew the plaintiff's trademarks were registered in Puerto Rico and that their goods were counterfeit.[19] Their decision to sell counterfeit REEBOK footwear had the purpose of harming plaintiffs in

the United States, a foreseeable harm under the circumstances of the present case. *Ocean Garden*, 953 F.2d at 504; *Winterland Concessions v. Fenton*, 835 F.Supp. 529, 531 (N.D.Cal.1993).

### 7) Importance of Violations.

While defendants sold their goods in the Dominican Republic, the impact of those violations in the United States are as harmful as those in the Dominican Republic. As noted above plaintiffs owns the trademark REEBOK for footwear in both the United States and the Dominican Republic.[20] Counterfeit REEBOK product sales in the Dominican Republic not only diminish the value of genuine REEBOK footwear but significantly and adversely affect the value of plaintiffs' consolidated holdings.

Upon close analysis of the above facts, the balance of the *Timberlane I* factors weighs in favor of extraterritorial jurisdiction. As noted by the Court in *Marnatech*, "This is not a case where the interests of the United States are too weak and the foreign harmony incentive for restraint too strong to justify an extraterritorial assertion of jurisdiction" 970 F.2d at 552 (quoting from *Timberlane I*, 549 F.2d at 609). Accordingly, and pursuant to the well-settled principles of broad jurisdiction under the Lanham Act, this Court can properly exercise jurisdiction in this matter as well as extraterritorial jurisdiction over defendants' foreign activities.

### Personal Jurisdiction Over Defendants

The Court also concludes that the circumstances of the present case justify the exercise of personal jurisdiction over the defendants. Defendants invoke the defense of lack of personal jurisdiction, by merely asserting that they are neither residents of Puerto Rico, or that they conducted any business in Puerto Rico.[21]

▪ The courts have repeatedly held that the exercise of personal jurisdiction is appropriate where a party has engaged in significant activities within a state or has created

---

19. Statement of Facts, ¶ 10; Rabenold Declaration at ¶¶ 17 and 19.

20. Defendants' Motion for Summary Judgment, p. 5.

21. Defendants' Motion for Summary Judgment, pp. 2, 4.

"continuing obligations between himself and residents of the forum." This exercise of jurisdiction may not be avoided merely because·the defendant did not "physically enter the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

A defendant's conduct with the forum must result from the defendants' purposeful act. *Young v. Pannell Fitzpatrick & Co.,* 641 F.Supp. 581 (D.P.R.1986) ("The inherent foreseeability of consequences is one of the keystones of personal jurisdiction"); *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 905 (1st Cir.1980). Plaintiffs may not haul a defendant into a jurisdiction as a result of "random," "fortuitous," or "attenuated" contacts. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), or pursuant to the "unilateral activity of another party or a third person." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984).

Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *see also Kulko v. Superior Court of California,* 436 U.S. 84, 94, 98 S.Ct. 1690, 1698, 56 L.Ed.2d 132 (1978); *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183–84; *Pritzker v. Yari,* 42 F.3d 53, 60 (1st Cir.1994) (personal jurisdiction may be relied upon where the cause of action arises out of, or relates to, the defendant's forum-based contacts.)

Defendants' systematic and continuous acts in Puerto Rico, as well as their use of their Puerto Rico bank account relating to their trademark counterfeiting, give rise to both general[22] and specific jurisdiction, to wit:

1) Defendants' transfer of several hundred thousand dollars through their bank accounts in Puerto Rico;[23]

2) Defendants directed the plaintiffs' investigators to wire-transfer the fund to one of their bank accounts in Puerto Rico specifically relating to the offer for sale of the counterfeit Reebok Shoes;[24]

3) The letter from defendants specifically names the bank account in the name of defendant Roberto Sebelen, care of defendant Almacenes San Juan C por A;[25]

4) Defendants manufactured and imported thousands of pairs of counterfeit REEBOK shoes, as many as two (2) containers of the shoes per month. Such shipping suggests that the bank account was probably used for other transactions involving counterfeit REEBOK footwear;[26]

5) Defendants have a furniture store in Puerto Rico;[27]

6) Defendants have imported several shipping containers into the port of San Juan.[28]

Moreover, defendants' acts support jurisdiction under Puerto Rico's Long–Arm Statute, 32 P.R.Laws Ann.App. III, R. 4.7, which permits the exercise of jurisdiction to the full extent of constitutional authority. *American Express International v. Mendez–Capellan,* 889 F.2d 1175 (1st Cir.1989). To determine whether, consistent with due pro-

---

**22.** Even when the claim does not arise from the defendant's contacts with the forum, a state may exercise in personam jurisdiction (general jurisdiction) when there are sufficient contacts between the state and the foreign corporation. Helicopteros Nacionales, 466 U.S. at 414–415; Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437 (1952). A court may exercise general jurisdiction when the defendant has been carrying on a "continuous and systematic, but limited, part of its general business" within the forum state. Helicopteros Nacionales, 466 U.S. at 414–415.

**23.** Statement of Facts, ¶ 11, Exhibit 1; Rabenold Declaration, at ¶¶ 19, 20, Exhibit 5.

**24.** Statement of Facts, ¶ 13; Rabenold Declaration, at ¶ 20, Exhibit 5.

**25.** Id.

**26.** Statement of Facts, ¶ 14; Perrone Declaration, at ¶ 9; Rabenold Declaration, at ¶¶ 7, 12, 13, 14 and 19.

**27.** Statement of Facts, ¶ 16; Wallace Declaration, ¶¶ 3, 4, Exhibit A.

**28.** Statement of Facts, ¶ 17; Wallace Declaration, ¶ 5, Exhibit B.

cess, personal jurisdiction may be exercised under Rule 4.7, plaintiffs must show that the nonresident defendant consummated some act or transaction on the island related to the cause of action and substantial enough to meet the due process requirements of "fair play and substantial justice." *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902 (1st Cir.1980).

As noted above in detail, defendants have conducted various businesses in Puerto Rico on a continuous basis. More important, defendants' use of their Puerto Rico bank account to further their counterfeiting activities is directly related to plaintiffs' cause of action for trademark counterfeiting and infringement. They are subject to the jurisdiction of this Court under either Rule 4.7(1) or 4.7(2).

This Court's exercise of either general or specific jurisdiction over the defendants comports with the due process requirements of fair play and substantial justice. Due process requires that the defendants have certain "minimum contacts with the forum so that maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *United Elec. Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1087 (1st Cir.1992). Defendants have purposefully availed themselves of the privilege of conducting activities within Puerto Rico, thus invoking the benefits and protection of its laws. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In view of the facts of the present case and applicable law, this Court concludes that it is entirely reasonable for the defendants to expect to defend themselves in Puerto Rico. Accordingly, personal jurisdiction over the defendants comports with Puerto Rico's long-arm statute and the due process clause of the Constitution.

Taking the facts discussed above in the light most favorable to the non-moving plaintiffs, *Casas Office Machines,* 42 F.3d at 684, this Court finds that the Court has personal and subject matter jurisdiction over the present action. Accordingly, defendants' Motion for Summary Judgment is **DENIED.** (Docket # 26)

**SO ORDERED.**